Ruth Smutny and Nona Thome, Appellees, v. Irving Park District et al., Appellants.

Gen. No. 36,235.

Opinion filed February 21, 1933.

GORMAN, SCHMIDT & McGRATH, for appellants; ANTHONY J. SCHMIDT, of counsel.

No appearance for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Upon complainants' amended bill praying for an injunction against the defendants and their answer, and upon a full hearing, the court on July 23, 1932;

entered a final decree, finding that the allegations of the bill were true, that the equities were with complainants, and that the prayer of the bill should be granted—"the action of defendants herein being *unreasonable and inequitable.*" And the court ordered that a writ of permanent injunction issue forthwith, "enjoining and restraining the defendants, their servants and agents, from molesting, interfering with, or in any manner prohibiting complainants from playing tennis in 'shorts' on any of the grounds or tennis courts under the control or supervision of the Irving Park District, or any of defendants."

From the decree defendants perfected the present appeal. No appearance or brief has here been filed by complainants.

In the bill complainants alleged that they are citizens of Chicago and reside in what is known as the Irving Park District in Cook county, Illinois; that the district is a duly constituted and legal subdivision of the State of Illinois; that it has five "Commissioners" (naming them as above) and a "Director," one Eugene Utz, appointed by the commissioners,—all of whom are now acting in their respective capacities; that among the functions of the district is to operate and maintain parks and playgrounds for the use and benefit of the public of the District; that on July 4, 1932, and for a long time prior thereto, the district was exercising its said functions; that Eugene Utz, as such director and under the commissioners, then was and had been in charge of all the parks and playgrounds of the district, including tennis courts, gymnasiums, etc.; that there was and had been for a long time on the market a type of suits, used by women and "made especially for playing tennis," known as "shorts"; that such suits, consisting of a blouse or waist and short trousers with bloomers, "facilitate movement, permit greater effort to be made and a better game of tennis to be played

by their use"; that they "fulfill all the canons of decency"; that similar suits "are used by girls in the gymnasium and outside track in said park system, and by women at the Olympic games"; that complainants as players of the game of tennis are interested in it as being a healthful form of exercise, etc.; and that "the medical profession has recommended said suits as beneficial to health because they permit of more assimilation of sun-rays." And complainants further alleged that on July 4, 1932, the commissioners, and especially Eugene Utz, director, etc., "willfully and without cause refused and prohibited complainants from playing in the parks and playgrounds of the district because they wore 'shorts' "; that "no reason was given to them for said refusal, except an arbitrary one, to permit them to play in the parks and playgrounds"; that "there is no ordinance *or rule* of the district prohibiting the use of said suits"; that on said day "they appeared in said costume to play in one of the parks of the district and were evicted, and permission to play tennis in said costume was refused"; and that such refusal was "arbitrary and without sanction of law."

The prayer of the bill was that an injunction issue against the defendants and each of them, enjoining them "from molesting, interfering with, stopping or refusing to permit complainants, and the public, from playing tennis in, or otherwise using, any of the parks or playgrounds of the district in said athletic costume, known as 'shorts'."

In defendants' answer they admitted that the district is a municipal corporation and that it has the five named defendants as commissioners; admitted that the district, on July 4, 1932, and prior thereto, operated and maintained parks and playgrounds; admitted that then and prior thereto there was on the market a type of suits known as "shorts," but denied that such suits

fulfilled all the canons of decency, etc.; denied that any of the defendants wilfully and without cause refused and prohibited complainants from playing tennis in said parks and playgrounds; alleged that they only prohibited them from wearing said suits known as "shorts" while engaged in playing tennis, and that said refusal and prohibition was occasioned because of a rule or regulation, which had duly been adopted by the commissioners, requiring that while playing tennis "all girls and women must wear a blouse and skirt or dress"; denied that on July 4, 1932, or at any other time, complainants were refused permission to play tennis on the grounds of the district or that they were evicted therefrom; alleged that complainants were only refused permission to play that game upon their insistence to do so while clothed in said suits known as "shorts"; and denied that such refusal was arbitrary and without sanction of law.

On the hearing both complainants, as well as other witnesses called by them, gave testimony. Ruth Smutny testified in substance that on July 4, 1932, she was playing tennis in one of the parks of the district, and that she was wearing one of the suits known as "shorts"; that she was told "to get off the court unless she played with a skirt on," and that "it would be perfectly all right if she put her skirt on"; that said suits "are three-piece costumes and one wears a skirt outside, and when you get to the court one takes off the skirt, and the 'shorts' are underneath the skirt, and underneath the 'shorts' are little bloomers"; that at the time she and her cocomplainant stopped playing and left the courts; that on the following day they called on Mr. Utz, director of the district, and made complaint to him; and that he said that "nobody in 'shorts' would be allowed to play on the courts, but that we could play there with our skirts on."

Nona Thome, the other complainant, testified in substance that on July 4, 1932, she had been playing tennis

in Kilbourn Park (one of the parks in the district) in the style of suit called "shorts" and was just coming off the court and was about to put her skirt on, when she was accosted by "a Mr. Harris, who is manager of Kilbourn Park"; that he said to her "you won't be allowed to play in those"; that upon being asked the reason he replied, "there is a rule forbidding it"; that upon her stating that she had several times played in other parks clothed in "shorts," he further stated "You can't here; there is a ruling against it; you had better go and see Mr. Utz"; that the next day she (the witness) and her cocomplainant, Ruth Smutny, had a conversation with Utz; and that upon his being asked why complainants could not play tennis in such "shorts," Utz. replied that it was the adopted rule of the district and that he had received orders from the commissioners to enforce the rule and was doing so. The witness further testified that the costume is "a three-piece outfit," that we wear the skirt "on the street," and that "when we reach the courts we take the skirt off and hang it right at the edge of the courts"; and that the costume, with the skirt off, makes it "much more comfortable in running and hitting the ball, because you are freer and haven't any binding on your legs."

Another witness, a Chicago physician, called by complainants, after stating that he was familiar with the costume used in playing tennis and commonly called "shorts," expressed the opinion that some of such costumes were not immodest and were beneficial to the health of the player because of the "influence of sunlight."

Complainants' two other witnesses, both tennis players, expressed opinions that the costumes known as "shorts" were "appropriate" and "proper" for the game. And one of them stated it to be her opinion that "there is nothing immodest about them, because

they are not as short as bathing suits or gymnasium suits.''

At the opening of defendants' case their solicitor directed the court's attention to a statute of the State,—being section 11 of the ''Act to provide for the organization of park districts,'' etc., in force July 1, 1895 (Cahill's St. 1931, ch. 105, ¶ 305, p. 2053), in which it is provided in part as follows:

''The commissioners elected in any park district organized under this Act shall constitute the corporate authorities of such district, and a majority thereof shall constitute a quorum at any meeting thereof. They shall have power to pass all necessary ordinances, *rules* and regulations for the proper management and conduct of the business of said board and of said corporation, and for carrying into effect the objects for which said park district is formed. They shall have full power to manage and control . . . all parks, boulevards and driveways maintained by such park district, or committed to its care or custody. . . . They may by ordinance regulate and restrain the use by the public or by individuals of any or all such parks, boulevards and driveways, . . .''

Defendants' only witness was T. B. McGrath, the general manager of the district, appointed by the commissioners. He testified that he had held his position for about 15 years, under yearly appointments. He produced a record or minute book of the commissioners, showing the passage some years before of a general ordinance regarding the government of the district, from which it appeared in substance that at annual meetings of the commissioners the president was empowered to appoint certain named standing committees and such special committees as necessity might require; that in accordance with the power the president had appointed a special committee of three of the commissioners, known as the ''Athletics and

Playgrounds Committee''; that the committee had formulated and recommended the passage of certain rules and regulations to be in force in the gymnasium, the swimming pool, the children's playgrounds, the tennis courts, etc.; that as to the playing of tennis in the courts of the district five rules or regulations were recommended, one of which was (5) ''that all girls and women must wear a blouse *and skirt or dress'';* that at the annual meeting of June 14, 1932, said rules and regulations, as so recommended, were unanimously adopted by the vote of the four commissioners who were present, and that it was at the meeting ordered: ''That the General Manager be instructed to see that the rules and regulations, as recommended in said report, governing athletic and playground facilities of the parks of the District be in force immediately, and that said manager is to enforce such rules and regulations under the jurisdiction of the Board.'' The witness further testified that he immediately took steps to enforce all of said rules; that as to the playing of tennis by women he notified the athletic director and others that ''shorts'' on the tennis courts would not be permitted, and for the reason that ''the Board had passed such a rule.'' The witness further testified that before said rule was passed, numerous residents in the vicinity and certain women's clubs had protested to the board against the playing of tennis on the courts of the district by women when clad only in ''shorts.''

After reviewing the present record we are of the opinion that there is no equity in complainants' bill and that the superior court erred in granting the permanent injunction as first above mentioned. It appears from the findings of the court, as contained in the decree, that the court was of the opinion that the rule in question, as well as the acts of defendants in the preventing of complainants playing on the tennis courts while clad in ''shorts,'' were ''unreasonable and

inequitable.'' It is well settled by decisions in this State that the courts are very reluctant to declare regulations, as contained in ordinances of municipal corporations, invalid because of their claimed unreasonableness. In *Troy v. Village of Forest Park,* 318 Ill. 340, 343, it is said: ''In determining whether the ordinance is reasonable or not the court must take into consideration the object to be accomplished, the means for its accomplishment and all existing conditions and circumstances. The presumption is always in favor of the validity of an ordinance, and to justify the court in interfering upon the ground that the ordinance is unreasonable requires a clear and strong case, and if there is room for a reasonable difference of opinion the action of the council is final.'' (See, also, *Klever Shampay Karpet Kleaners, Inc. v. Chicago,* 323 Ill. 368, 375.) The question herein involved is not strictly whether an *ordinance* of a municipality is unreasonable, but rather whether a certain *rule or regulation* passed by the governing body of the municipal corporation is unreasonable or not, particularly when such body is expressly empowered by statute to pass all necessary rules and regulations for carrying into effect the objects for which the municipal corporation was created. We think that the same principles of law, as above stated, should apply to rules and regulations as well as to ordinances. In 44 Corpus Juris, p. 1101, sec. 4022 (under the heading ''Public Parks, etc.'') it is said: ''The municipal authorities may make all necessary and proper regulations with regard to the government and management of the property, and how it shall be used by the public, . . . and to secure to the public its common enjoyment; and so long as they act within the legitimate scope of their authority their discretion is not subject to outside interference or judicial revision or reversal, but to be valid the regulations adopted must be reasonable; . . .'' Under the pleadings and all the facts and circumstances as dis-

closed in the present record, we are unable to say that the rule or regulation in question was so unreasonable as warranted the entry of the injunctional decree appealed from.

For the reasons indicated the decree is reversed and the cause remanded with directions to dismiss complainants' bill for want of equity.

*Reversed and remanded with directions.*

SCANLAN, P. J., concurs.